UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUSAN GALINIS, et al.,

Plaintiffs,

v.

BAYER CORPORATION, et al.,

Defendants.

Case No. 09-cv-04980-SI

**ORDER GRANTING IN PART AND DENYING IN PART MOTION RE COMMON BENEFIT ASSESSMENT**

Re: Dkt. Nos. 174, 179, 186

This action is before the Court upon remand from the Southern District of Illinois, where the Honorable David R. Herndon oversaw the multi-district litigation ("MDL") *In re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, No. 09-md-02100-DRH-PMF. Because this case was an outlier in many respects, Judge Herndon recommended remand to this Court on October 1, 2018; the JPML agreed, and on December 28, 2018 this case was remanded to this District. Dkt. No. 75, 79. In October 2019, after being sent back to this Court, plaintiffs Susan Galinis and Richard Galinis[1] and defendant Bayer HealthCare Pharmaceuticals Inc. ("Bayer") reached an agreement in principle resolving all matters in controversy. Dkt. No. 169 (Statement of Settlement).

Presently at issue is plaintiffs' motion for an order regarding the application of a common benefit assessment to their case ("Motion"). Dkt. No. 172-3. The motion came on for hearing on December 20, 2019. Having carefully considered the papers filed and the arguments made, the Court hereby rules as follows.

---

[1] Unless otherwise specified, references in this Order to "plaintiff" are to Susan Galinis alone, and references to "plaintiffs" are to Susan and Richard Galinis. For clarity, at times this Order refers to plaintiff Susan Galinis by her first name.

**BACKGROUND**

This Court's June 28, 2019 order denying defendant's *Daubert* motions and denying in part and granting in part defendant's motion for summary judgment recites the factual and procedural background of this decade-old case in detail. *See* Dkt. No. 138. Below are the facts relevant to the instant motion.

Plaintiffs filed this lawsuit in the Northern District of California on October 19, 2009. Dkt. No. 1 ("Complaint"). In November 2009, finding it related to then-pending MDL litigation, the Judicial Panel on Multidistrict Litigation ("the Panel") conditionally transferred plaintiffs' case to the Southern District of Illinois for coordinated or consolidated pretrial proceedings. Dkt. No. 5 (Conditional Transfer Order (CTO-4)). The consolidated proceedings related to Bayer's drospirenone-containing oral contraceptives (either Yaz or Yasmin) and claims for personal injuries or wrongful death stemming from their use. MDL No. 2100, Dkt. No. 27. The vast majority of plaintiffs in the MDL proceedings alleged one of three types of injuries: (1) venous thromboembolic events ("VTE"), which include blood clots in a vein, such as deep vein thrombosis and pulmonary embolism; (2) arterial thrombotic events ("ATE"), or blood clots that develop in an artery, which may lead to stroke or heart attack; and (3) gallbladder injuries. Dkt. No. 76 at 4 (Memo. To Transferor Court from the Transferee Court). Plaintiff Susan Galinis suffered from an ATE. Dkt. No. 138 at 7. Initial efforts in the MDL focused on cases involving VTE and gallbladder related injuries and the initial bellwether trial pool consisted only of those cases. Dkt. No. 76 at 22 (Memo. To Transferor Court from the Transferee Court).

Soon after the MDL's formation, Judge Herndon, the coordinating MDL Court, appointed attorneys to a Plaintiffs' Steering Committee ("PSC"). *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:09-md-02100-DRH-PMF ("Transferee Court" or "MDL Court") (Dkt. No. 108). On March 25, 2010, the MDL Court established a common benefit fee and expense fund "for the fair and equitable sharing among plaintiffs, and their counsel, of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation." Dkt. No. 180-2 at 1 (Response Ex. 2 – Common Benefit Order). The Common Benefit Order "applie[d] to all cases

2

now pending, or later filed in, transferred to, or removed to, this Court and treated as part of the coordinated proceeding." *Id.* at 2. Participating Counsel, defined to include all members of the Plaintiffs' Steering Committee ("PSC"), "are entitled to receive the 'Common Benefit Work Product.'" *Id.* Participating Counsel are also "eligible for reimbursement for time and efforts expended for the common benefit." *Id.* at 11. The Common Benefit Order also provides:

> All Plaintiffs and their attorneys who are subject to this Order and who, either agree or have agreed — for a monetary consideration — to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including such compensatory and punitive damages, with respect to Yasmin/Yaz/Ocella claims are subject to an assessment of the "gross monetary recovery."

*Id.* at 5. "Gross monetary recovery includes any and all amounts paid to plaintiffs' counsel by Defendants through a settlement or pursuant to a judgment." *Id.* Amended on June 23, 2014, the common benefit fee assessment for ATE cases is 9% for common benefit attorneys' fees on the Gross Recovery Amount and 2% for costs. Dkt. No. 180-3 (Response Ex. 3 – Supplement to Order Establishing Common Benefit Fund).

Plaintiffs' counsel signed the Common Benefit Participation Agreement on March 29, 2010 and thus qualify as "Participating Counsel." Dkt. No. 180-1 (Response Ex. B to Ex. 1). For any cases subject to a common benefit assessment, Bayer must withhold the assessment amount from any and all sums paid to plaintiffs and their counsel. Common Benefit Order at 6-7.

In the VTE bellwether cases, discovery began in November 2010 and trial was scheduled to begin in the first case on January 9, 2012. Dkt. No. 76 at 22 (Memo. To Transferor Court from the Transferee Court). Two weeks before this first bellwether trial, the parties announced a resolution process for the VTE cases. *Id.* at 4. Prior to resolution, the parties deposed nearly every relevant corporate witness, completed expert discovery, and prepared selected cases for trial, including by filing and resolving pre-trial, *Daubert*, and summary judgment motions. *Id.* Specifically, more than 50 defendant corporate witness depositions were taken in four countries on three continents. *Id.* at 5-9 (listing deponents). In addition, all pre-trial work, including *Daubert* motions, briefing on 95 motions *in limine*, deposition designations, exhibit lists, and more were concluded in the approximately two months before the January 9, 2012 bellwether trial date. *Id.* at 9.

3

1 In late August 2014, the MDL Court ordered the parties to work up the ATE cases for trial and pursue case-specific discovery in 40 cases. Dkt. No. 76 at 22 (Memo. To Transferor Court from the Transferee Court). On December 5, 2014, the MDL Court set the first ATE case for trial on June 15, 2015. *Id.* Prior to this trial, a committee of MDL court-appointed plaintiffs' counsel negotiated a settlement to resolve the remaining ATE cases. Motion at 4. The ATE settlement implementation involved a voluntary opt-in procedure. *Id.* at 4-5.

Some three years later, on October 15, 2018, with various *Daubert* and summary judgment motions pending, the Judicial Panel on Multidistrict Litigation remanded plaintiffs' case to this Court. Dkt. 77 (Conditional Remand Order). Soon after remand, Judge Herndon recommended that the MDL be terminated. Dkt. No. 180-4 (Response Ex. 4 – Order Disbanding the PSC). On January 4, 2019, the Panel closed the MDL. Dkt. No. 182 at 3 (Reply). Judge Herndon then retired. *Id.*

Plaintiff Susan Galinis did not opt-in to the voluntary ATE settlement agreement negotiated by the PSC. Motion at 4-5. Had she done so, Susan would have been eligible to receive approximately $175,000. *Id.* The PSC urged plaintiffs and their counsel to accept, stating it was "the best result that an ATE plaintiff could hope to achieve." *Id.* at 4. Following Susan's rejection of the voluntary settlement, plaintiffs' attorneys in this case assumed full control prosecuting the Galinis family's claims. *Id.* at 6. Plaintiffs' attorneys developed her case on their own and spent four years working it up. *Id.* In that time, plaintiffs' attorneys consulted with 23 experts, served 14 expert reports, took or defended 25 depositions, and handled pre-trial motions including summary judgment and *Daubert*. *Id.* at 7. Shortly before trial, plaintiffs' attorneys negotiated a settlement that is orders of magnitude larger than what Susan would have received under the voluntary settlement. *Id.* at 7-8.

**LEGAL STANDARD**

In the Ninth Circuit, "[i]t is well established . . . that one district judge in a multi-judge court may modify or overrule the interlocutory order of another judge sitting in the same case for 'cogent reasons' or where 'exceptional circumstances' are presented." *In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. 568, 572 (N.D. Cal. 1981), *aff'd*, 693 F.2d 84 (9th Cir. 1982) (*citing Greyhound*

*Computer Corp. v. Int'l Bus. Machines Corp.*, 559 F.2d 488, 508 (9th Cir. 1977)). Whether to reconsider a question previously decided is left to the district judge's sound discretion. *Id.*

"Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (*quoting Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The common fund doctrine "ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees," and "permits the court to award attorneys' fees from monetary payments that the prevailing party recovered in the lawsuit." *Staton*, 327 F.3d at 967.

**DISCUSSION**

Here, plaintiffs argue this Court should use its equitable powers to assess a fair and just amount to be levied on their settlement proceeds for the common benefit fund. Motion at 8-10. Bayer and the PSC argue that this Court lacks jurisdiction. Dkt. Nos. 180, 185. The Court disagrees and finds that it may modify an order of the MDL Court for cogent reasons or where exceptional circumstances exist. *In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. at 572 (citations omitted). Considering the work performed by the PSC in comparison to the work and risks assumed by plaintiffs' attorneys, plaintiffs argue applying the Common Benefit Order (as amended) would result in a windfall for the PSC. *Id.* at 11. The Court agrees.

Indeed, "exceptional circumstances" are presented here. Plaintiffs' attorneys conducted copious amounts of work as the MDL proceedings wound down and settlements were reached in other ATE cases. In so doing, plaintiffs' attorneys assumed the risk that their clients would not be awarded any relief at any stage of the case. Contrary to the PSC's prediction, plaintiffs' attorneys negotiated a favorable settlement amount for Susan Galinis and her family. Indeed, the settlement is far more than the voluntary settlement Susan would have been eligible to receive. Motion at 8. Having reviewed the parties' submissions following the December 20, 2019 hearing, the Court finds the instant case comparable to cases subject to a 4% fees assessment. The Court acknowledges the work conducted by the PSC, for the benefit of all plaintiffs, regardless of the type of injury, and later

relied upon in part by plaintiffs' attorneys. As such, this Court finds a common benefit assessment of 4% for common benefit attorneys' fees and 2% for common benefit costs appropriate.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' Motion in part and assesses the common benefit award for this case to be 4% for common benefit attorneys' fees on the Gross Recovery Amount (as defined by the Common Benefit Order) and 2% for costs. Counsel for the PSC can pursue any additional assessment it believes it is owed on the Gross Recovery Amount separately from this action.

**IT IS SO ORDERED**.[2]

Dated: January 22, 2020

SUSAN ILLSTON
United States District Judge

---

[2] The Court GRANTS Bayer's corresponding motions to seal. Dkt. Nos. 179, 186.