UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| SUSAN GALINIS, et al., <br> Plaintiffs, <br> v. <br> BAYER CORPORATION, et al., <br> Defendants. | Case No. 09-cv-04980-SI (RMI) <br><br> **ORDER ON CROSS MOTIONS TO ENFORCE THE SETTLEMENT AGREEMENT** <br><br> Re: Dkt. Nos. 193, 201 |

Now pending before the court are dueling motions to enforce a settlement agreement filed by both parties, as well as a motion for sanctions filed by Plaintiffs. On October 11, 2019, the parties agreed to a settlement of this case, the terms of which were placed on the record. *See* (dkt. 170); *see also Transcript ("Tr.")* (dkt. 207 *SEALED*). Later that day, the Parties jointly filed a Statement of Settlement (dkt. 169), through which they confirmed that they had arrived at an agreement as to all material terms for all matters in controversy. *Id.* at 3. Thereafter, in February of 2020, Plaintiffs and Defendants ("Bayer") both filed motions to enforce the settlement agreement. (dkts. 193, 201). For the reasons described below, Plaintiff's motion to the enforce the agreement is granted, Plaintiffs' request for sanctions is denied, and Bayer's motion to enforce the agreement is granted in part and denied in part.

**BACKGROUND**

On October 11, 2019, in the course of a telephonic settlement conference, the parties reached an agreement. *See Tr.* (dkt. 207 *SEALED*) at 2. Plaintiffs' counsel then proceeded to enumerate the terms of the agreement for the record as such: (1) Plaintiffs will accept Defendant's offer of a certain sum of money in full settlement of all their claims; (2) the funds will be paid by

1  check or wire transfer to counsel for Plaintiffs; (3) Plaintiffs will sign releases containing a general
2  release of all claims and a waiver of all rights under California Civil Code Section 1542; (4)
3  Plaintiffs will agree to satisfy all liens from the settlement proceeds and to indemnify Defendants
4  from any lien claims brought by any lienholder; (5) Plaintiffs will dismiss their complaint with
5  prejudice, with each side bearing its own costs and fees; (6) having agreed to certain
6  confidentiality provisions, the Parties expected to finalize those details later that evening; (7)
7  "[a]nd there are no other terms." *Id*. at 2-3. The court then asked whether Bayer agreed with these
8  terms and agreed to be bound by them; counsel for Bayer responded, "Yes. We agree to them . . .
9  [o]ther than the final iteration of the provision we're still working on." *Id*. at 3. The court then
10 asked counsel for Plaintiffs, "having stated the terms for the record and with the authority of
11 Plaintiffs, do you agree to be bound by them as well?" *Id*. Plaintiffs' counsel likewise responded
12 in the affirmative. *Id*. at 4. As to the remaining details pertaining to the confidentiality provision,
13 the court told the parties that they could be "relieved of the deadlines that are due tonight if they're
14 able to file a notice with the court that they have finalized . . . the remaining portion that the
15 parties were discussing." *Id*. at 4. As mentioned, later that day, the parties filed their joint notice of
16 settlement. *See* (dkt. 169). At the heart of the parties' current dispute is the nature of the releases
17 that Plaintiffs agreed to execute, as well as what might be an appropriate protocol for the
18 resolution of liens; accordingly, each party has moved for an order that would enforce their
19 interpretation of these terms of the settlement agreement. *See generally* Pls.' Mot. (dkt. 193-1),
20 and Def.'s Mot. (dkt. 201).
21     On February 3, 2020, Plaintiffs moved for enforcement and submitted that they have
22 complied with all terms of the parties' settlement agreement by providing Bayer with the required
23 release, and with their agreement to satisfy all liens, to indemnify Bayer from claims brought by
24 any lienholder, and to dismiss their claims with prejudice. Pls.' Mot. (dkt. 193-1) at 3. Submitting
25 that although the terms of the settlement agreement did not require it, Plaintiffs also authorized
26 Bayer to deduct the sum for the common benefit award found by Judge Illston to be reasonable
27 (*see Order* (dkt. 192) at 6) from the settlement proceeds and to pay that amount directly to the
28 common benefit fund for the Multi-District Litigation ("MDL"). *See* Pls.' Mot. (dkt. 193-1) at 3.

Plaintiffs, therefore, suggest that "Bayer's continued refusal to disburse the funds is not only a breach of the parties' settlement agreement, it would also appear to be a violation of Judge Illston's order." *Id*. at 4. Lastly, Plaintiffs seek an award of sanctions, including attorney's fees for bringing the enforcement motion as well as interest on the settlement proceeds from the date of Plaintiffs' Motion until the time that the settlement funds are disbursed. *See id.* at 1, 5-6.

On February 18, 2020, Bayer filed its own enforcement motion and submitted that Plaintiffs should be made to sign the standard release form that Bayer has used in settlements for other cases that also involve drospirenone-containing oral contraceptives, which includes key elements missing from Plaintiffs' release, such as warranties that Plaintiffs have capacity, authority, and that they have conferred with their counsel, as well as providing for a particular lien resolution protocol. *See* Defs.' Mot. (dkt. 201) at 5-6. At bottom, Bayer contends that "Plaintiffs' unilateral interpretation of the settlement terms is fundamentally inapplicable in a settlement context, for it does not end the litigation between the parties, as they intended." *Id*. at 6. Thus, Bayer adds that "it simply cannot agree to Plaintiff's purported release . . . [because] it cannot provide closure to either side." *Id*. In more than 19,000 other settlements involving the same class of medications, Bayer notes that it has insisted on the use of a standard release form, entitled, "Release, Indemnity, and Assignment" (hereafter, "Yasmin Release"), and that Plaintiffs' counsel was aware of Bayer's practice in these other cases due to having been involved "in dozens of such cases." *Id*. at 8. According to Bayer, the differences between the release executed by Plaintiffs and the Yasmin Release are "provisions that would guarantee Plaintiffs have not assigned away their claims to others, warrant that Plaintiffs have the capacity to execute the settlement, provide consent and acknowledge that Bayer must report the settlement to Medicare, and outline a lien resolution protocol designed to avoid future litigation between the parties over settlement fund distributions." *Id*. at 9. Thus, while Bayer maintains that "[t]he parties agree that a settlement was reached in October 2019 during a telephone call with Judge Illman," that nevertheless, "[o]nly Bayer's release permits the parties to move on." *Id*. at 11.

In this respect, Bayer contends that failure to use the Yasmin Release "leaves the parties in a world where future litigation is likely, if not inevitable." *Id*. Because Plaintiffs' release contains

3

no provision "where the claimants and counsel warrant, among other things, that Plaintiffs actually have the authority to execute the release and that Plaintiffs have not sold or transferred their claims to someone else," Bayer submits that "there is no release because Bayer secures no assurance that the parties to whom they are paying the settlement funds can actually settle the case." *Id*. at 11-12. Likewise, Bayer argues that the same is true due to the fact that Plaintiffs' release fails to represent or warranty that Plaintiffs have had the opportunity to confer with their counsel to discuss the settlement. *Id*. at 12. Bayer also submits that, unlike Plaintiffs' release, the Yasmin Release contains a preferable lien resolution protocol such that Plaintiffs and their counsel identify lienholders and arrive at agreements with those parties about how to resolve the liens, and then to represent to Bayer that they have identified liens and agreed to pay those liens from settlement funds. *Id*. at 12 n.5. Bayer contends that "[a]bsent such a provision, lienholders will have recourse to sue Bayer (and potentially Plaintiffs' counsel)." *Id*. at 12. This sort of uncertainty, Bayer submits, does not "provide the closure that comes with a release, which is why the provision is included in every Yasmin Release. Yet Plaintiffs' (sic) omit the provision, opening the door to future litigation between the parties." *Id*. Bayer further submits that while "Plaintiffs agreed to sign a release," the Parties dispute whether or not such release should extend not only to Bayer, but also to subsidiaries, suppliers, distributors, and directors, where Plaintiffs contend that such a broad release was not negotiated and not included in the settlement terms placed on the record. *Id*. at 13. Once again, Bayer submits that the provisions contained in the Yasmin Release should be binding on Plaintiffs in this case because Plaintiffs' counsel have been "parties to dozens of these settlements and have always used the standard release," and thus, "[w]here two parties have an extensive course of dealing with one another prior to entering into a contract, the meaning of the contractual terms is informed by that course of dealing." *Id*. at 14-16.[1] Bayer also contends that

---

[1] Bayer's contention here is without merit for a number of reasons. First, Bayer has had no prior course of dealing with the Plaintiffs in this case, and Bayer's attempt to impute its prior course of dealing with Plaintiffs' counsel onto Plaintiffs is unavailing. Further, it should be noted that course of dealing, trade usage, course of performance, and other such extrinsic evidence, may be introduced or considered to explain *missing or ambiguous terms* because, for example, the parties' past course of dealing with one another could serve as evidence of their intent. *See Westlands Water Dist. v. United States*, 337 F.3d 1092, 1101 (9th Cir. 2003). However, in addition to the fact that Plaintiffs have no prior course of dealing with Bayer, there are no missing or ambiguous terms involved here.

Plaintiffs' waiver of rights under California Civil Code § 1542 is defective because that section of the civil code was amended more than a year ago, but that Plaintiffs' release quotes the pre-amendment language. *Id.* at 13. Lastly, Bayer argues that Plaintiffs' sanctions demand is meritless because Bayer has worked with Plaintiffs in good faith to resolve this dispute, including suggesting that the parties work with the undersigned to that end "mere hours after Plaintiffs sent Bayer a purported release omitting key release provisions bringing finality to the litigation . . ." *Id.* at 17-18.

By the time the Parties filed their reply briefs, the issue concerning the appropriate amount that should be paid to the common benefit fund was resolved when Judge Illston fixed the amount at 6 percent; following which, as Bayer notes, the Plaintiffs' Steering Committee "has since agreed to release Bayer from the lien upon confirmation that Bayer pays the 6% assessment ordered by Judge Illston." *See* Bayer's Reply Br. (dkt. 211) at 3 n.3; *see also* Pls.' Reply Br. (dkt. 203) at 2. As Plaintiffs put it, "[f]or the past three months, Bayer has refused to pay Plaintiffs, citing uncertainty as to the common benefit assessment applicable" to this case, and with that issue now resolved, Plaintiffs contend that Bayer should not be allowed to insert new terms into the agreement such as to provide that Plaintiffs have the capacity to enter into an agreement, that Plaintiffs have conferred with counsel about the agreement, and that Plaintiffs must accept Bayer's lien resolution protocol. *See* Pls.' Reply Br. (dkt. 203) at 3-4. In other respects, Bayer's reply is largely repetitive. *See* Bayer's Reply Br. (dkt. 211) at 2-8, *and* Bayer's Mot. (dkt. 201) at 5-16.

**DISCUSSION**

At the outset, it should be noted that "[a] settlement agreement is treated as any other contract for purposes of interpretation." *United Commercial Ins. Serv., Inc. v. The Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). In this regard, it should also be noted that an oral settlement agreement is binding on the parties when it is memorialized on the record in court, even if one party has a change of heart after agreeing to its terms but before the terms are reduced to writing. *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002) (citing *Sargent v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2000)). Further, "[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts

generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th. Cir. 1989); *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013); *United Commercial Ins. Serv., Inc.*, 962 F.2d at 856; *see also Harrop v. West. Airlines, Inc.*, 550 F.2d 1143, 1145 (9th Cir. 1977).

In California, the essential elements for contract formation are as follows: that the parties are capable of contracting; that the parties consent to contracting; that the contract involves a lawful object; and that there exists sufficient cause or consideration. *See Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (2004) (citing Cal. Civ. Code § 1550). "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Id*. (citing Cal. Civ. Code § 1565). The existence of mutual consent is determined by objective criteria; or, put another way, the "parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.'" *Weddington Prod., Inc., v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (quoting Cal. Civ. Code § 1580). As to enforcement, it is well settled that a district court has the equitable power to summarily enforce an agreement to settle a case pending before it. *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *see also Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement. *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *see also Callie*, 829 F.2d at 890. Additionally, all parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Harrop*, 550 F.2d at 1144-45.

If the material facts concerning the existence or terms of the settlement agreement are in dispute, the court must hold an evidentiary hearing. *See Bill Poon & Co., Architects, Inc. v. Bafaiz*, No. C 07-5566 PJH, 2009 U.S. Dist. LEXIS 24438, at *6-7 (N.D. Cal. Mar. 16, 2009). On the other hand, where the existence of material facts, or the contract's material terms are not in dispute, and no party disputes their intent to be bound by the agreement, the settlement agreement is enforceable. *See Tiger Bay Vill. Corp. v. Yihe Corp.*, No. CV 13-08837-RSWL-FFM(x), 2014 U.S. Dist. LEXIS 100607, at *8-9 (C.D. Cal. July 18, 2014); *see also Bill Poon*, 2009 U.S. Dist. LEXIS 24438, 2009 WL 688917, at *3, *7 ("In this case, the parties do not dispute the existence or material terms of the Settlement Agreement. The Buyer Group identified no material term that

is absent or omitted from the Settlement Agreement. Nor did they argue that they did not intend to be bound by the terms of the Settlement Agreement, or raise any factual issues regarding the creation of the Settlement Agreement. Accordingly, the court finds that the parties have entered into an enforceable agreement.).

Here, the Parties do not dispute the existence of an agreement, nor do they dispute any material fact underlying any of the essential terms that were placed on the record. As mentioned above, Bayer submits that it was its intention that Plaintiffs execute the Yasmin Release rather than executing a general release of their own formulation. However, when the terms of the parties' agreement were stated for the record – to the effect that Plaintiffs will sign releases containing a general release of all claims and a waiver of all rights under California Civil Code Section 1542 – Bayer merely noted its agreement with this statement. Plaintiffs' general release provides that upon payment of the agreed upon sum, Plaintiffs fully, finally and forever release and discharge Defendants in said action and their principals, agents, employers, employees, affiliates, partners, assigns, representatives, corporations and their past and present directors, officers, shareholders and subsidiaries, and all other persons or entities who Plaintiffs claim or may claim are responsible in any way for the injuries alleged in the Action, and from any and all past, present and future claims, demands, obligations, actions, causes of action, rights, damages, costs, attorney's fees, losses, expenses or compensation of any other nature, whatsoever, and any personal or bodily injury claims arising out of the matters alleged in the Action. *See* General Release (dkt. 193-2) at 25-26. Despite the clear and unequivocal language of the parties' agreement as placed on the record, and the clear language of Plaintiffs' release, Bayer still incorrectly claims that this release does not make it clear which entities or persons are subject to the release. The court disagrees. Further, as to Bayer's claim that the parties' agreement called for a specified lien resolution protocol, the court likewise disagrees. The parties' agreement merely provided that Plaintiffs will agree to satisfy *all* liens from the settlement proceeds and to indemnify Defendants from *any* lien claims brought by *any* lienholder, and Plaintiffs' General Release memorialized that term. *See id*. at 26.

As stated, California recognizes the objective theory of contracts, under which it is the

1 objective intent, as evidenced by the words of the contract, rather than the subjective intent of one
2 of the parties, that controls interpretation; thus, a party's undisclosed intent or understanding is
3 irrelevant to contract interpretation. *See Founding Members of the Newport Beach Country Club v.*
4 *Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003). Had the parties intended to
5 specify the use of the Yasmin Release, or the employment of a particular lien resolution protocol,
6 they could have expressly done so; however, this court will not include such terms in the parties'
7 agreement by implication, as Bayer suggests. *See e.g.*, *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th
8 758, 763-64 (Cal. 2001) ("Because Safeco chose not to have a criminal act exclusion, instead
9 opting for an illegal act exclusion, we cannot read into the policy what Safeco has omitted. To do
10 so would violate the fundamental principle that in interpreting contracts, including insurance
11 contracts, courts are not to insert what has been omitted."). In California, the words of a contract,
12 as understood in their ordinary and popular sense, govern the contract's interpretation if the
13 language is clear. *See Nemetona Trading Ltd. v. Kurt Orban Partners, L.L.C.*, No. 14-cv-03284-
14 SI, 2015 U.S. Dist. LEXIS 32208, at *14-15 (N.D. Cal. Mar. 11, 2015); *see also Verinata Health,*
15 *Inc. v. Ariosa Diagnostics, Inc.*, 329 F. Supp. 3d 1070, 1085 (N.D. Cal. 2018). In this regard, the
16 court finds that the contractual term pertaining to the general release that Plaintiffs agreed to
17 execute was clear and unambiguous. If it was Bayer's intention that Plaintiffs should execute the
18 Yasmin Release, this intent was undisclosed and subjective at the time that the terms of this
19 agreement were expressed, agreed upon, and placed on the record. Furthermore, the court finds no
20 cause for Bayer's concerns, expressed after the fact, regarding whether or not Plaintiffs had
21 conferred with their counsel about the settlement, or whether or not Plaintiffs had the authority to
22 settle their own case, because Plaintiffs' counsel represented, on the record, that it was "with the
23 authority of Plaintiffs" that he was agreeing to be bound by the terms of the agreement. *See Tr.*
24 (dkt. 207 *SEALED*) at 3.

25 On the other hand, the court does find some merit to Bayer's contention that Plaintiffs'
26 release is defective to the extent that it makes reference to a pre-amendment version of the waiver
27 provision described in Cal. Civ. Code § 1542. In October of 2019, when the terms of the parties'
28 agreement were placed on the record and Plaintiffs agreed to execute a general release that would

include a waiver of all rights under § 1542, the objectively viewed understanding of such a term is that reference was being made to the version of § 1542 in effect at the time. Given, that § 1542 was amended on January 1, 2019, to include a few grammatical tweaks as well as the adding of terms such as "releasing party" and "released party" alongside the existing terms of "creditor" and "debtor," and given that Plaintiffs' general release contains the pre-amendment language, Plaintiffs' general release must be modified to reflect the post-amendment language of § 1542 that was in effect at the time the parties' agreement was placed on the record in this case.

Accordingly, for the reasons stated above, Plaintiffs' motion to enforce the settlement agreement is **GRANTED**, and Bayer's motion to enforce the settlement agreement is **GRANTED** only to the extent that Plaintiffs are **ORDERED** modify their General Release to reflect the post-amendment version of Cal. Civ. Code § 1542. Further, Plaintiffs' request for sanctions is **DENIED** because the request contains no argument or authority identifying bad faith conduct for which a sanctions award might be appropriate under the circumstances; instead, Plaintiffs' Motion has merely advanced a bare-boned request for sanctions by stating that courts have inherent authority to sanction a party for bad faith conduct in executing a settlement agreement. *See* Pls.' Mot. (dkt. 193-1) at 5-6.

**IT IS SO ORDERED.**

Dated: April 14, 2020

ROBERT M. ILLMAN
United States Magistrate Judge